UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BRECKENRIDGE O'FALLON, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CV2005 CDP |
| | ) | |
| TEAMSTERS UNION | ) | |
| LOCAL NO. 682, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

Plaintiff Breckenridge O'Fallon, Inc. brings this action to vacate an arbitration award in favor of defendant Teamsters Union Local No. 682. The Union has counterclaimed for enforcement of the award and also moves for an award of attorneys' fees. The parties have both filed motions for summary judgment on their claims. For the reasons that follow, I will enter judgment in Local 682's favor, confirming the award, but I will not award it fees.

## Background

Plaintiff Brackenridge of O'Fallon, Inc. and defendant Teamsters Union Local No. 682 are parties to a collective bargaining agreement (CBA), effective 2006-2011. Ron Eguia, a ready-mix concrete truck driver employed by Breckenridge and a member of Local 682, injured his back in September of 2007. After an extended absence, Eguia's physician released him to return to work.

Following Breckenridge's established policies, Eguia was scheduled for a Functional Capacity Evaluation (FCE), which is a physical test that approximates the exertional demands of the ready-mix concrete driver position. Eguia attempted the FCE in December of 2007, but could not complete it. Breckenridge then arranged for Eguia to be evaluated by physician of its choosing, who determined that Eguia could not perform the work of a ready-mix concrete truck driver. Based on the FCE result and the second physician's opinion, Breckenridge did not schedule Eguia to return to his position. Eguia received more treatment from his own doctor and later returned to Breckenridge with another release indicating he could return to work. Rather than sending Eguia for a second FCE, Breckenridge created a list of physicians from which Eguia selected one for a final, binding physical examination. After examining Eguia and reviewing the medical records, the third physician decided Eguia could not perform the demands of the ready-mix concrete truck driver. Breckenridge again refused to send Eguia to a second FCE and did not schedule him for work in his past position.

Believing that Breckenridge's failure to send Eguia for a second FCE violated the parties's CBA, Eguia and Local 682 filed a grievance and then arbitrated the issue with Breckenridge before a neutral arbitrator. Citing provisions of the parties' CBA giving Breckenridge the rights to "establish rules for employee safety" and to "require the FCE at any time in its sole discretion,"

Breckenridge argued it was under no obligation to send Eguia for a second FCE. It also argued that, consistent with the CBA, it followed applicable portions of the Family and Medical Leave Act, which required it to send Eguia to a third physician selected by Eguia for a binding determination. The Union responded by adducing evidence of Breckenridge's past practices with other employees, including examples of Breckenridge allowing other employees to take a second FCE after failing the first time. The arbitrator, after hearing evidence and arguments and receiving the parties' briefs, determined that Breckenridge's failure to send Eguia for a second FCE when he had a release from his physician clearing him for work violated the parties' CBA. In particular, the arbitrator concluded that, having chosen the FCE process as part of its power to promulgate employee safety rules, Breckenridge was "obligated to be consistent in the manner it administers the FCE" and could not "unilaterally discard those rules in favor of a process specified by the FMLA."

Breckenridge then filed this action, asserting the arbitrator's award should be vacated under the Federal Arbitration Act, the Labor-Management Relations Act, and Missouri law. Local 682 counterclaimed for enforcement of the award. Both parties have moved for summary judgment on their claims, and Local 682 also moves for an award of its attorneys' fees, contending Breckenridge's lawsuit is wholly without merit.

## Discussion

The standards for summary judgment are well settled. In ruling on summary judgment, the Court views the facts and inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Both parties have moved for summary judgment, and although they disagree on the interpretation of certain facts, there are no material facts in dispute.

Breckenridge moves to vacate the award under three alternative statutes: § 301 of the Labor-Management Relations Act (LMRA), codified at 29 U.S.C. § 185; § 10 of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*; and the Missouri Uniform Arbitration Act, Mo. Stat. Ann. § 435.405. Essentially, Breckenridge contends the arbitrator's decision should be vacated under any of these statutes, because the decision fails to "draw its essence" from the parties' collective bargaining agreement.

In reviewing an arbitrator's decision under any theory, a court's review "is restricted by the great deference accorded arbitration awards." *Williams v. National Football League*, 582 F.3d 863, 883 (8th Cir. 2009); *see also Boise*

*Cascade Corp. v. Paper Allied-Indus., Chem. & Energy Workers*, 309 F.3d 1075, 1080 (8th Cir. 2002) (in reviewing an arbitral award, courts must "accord an extraordinary level of deference to the underlying award itself.") (internal citation and quotation marks omitted). For instance, court may not reconsider the merits of an arbitral award, even if the award rests on factual errors or misinterpretation of the contract. *Boise Cascade*, 309 F.3d at 1080. Indeed, even if a court is convinced that the arbitrator committed serious error, the court must still confirm the award as long as the arbitrator "is even arguably construing or applying the agreement." *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987); *accord United Food & Commercial Workers' Union Local No. 655 v. St. John's Mercy Health Sys.*, 448 F.3d 1030, 1032 (8th Cir. 2006).

Within the specific context of the LMRA, a court cannot review the merits of the underlying dispute and is required to enforce the arbitrator's decision unless it fails to "draw[] its essence from the underlying collective bargaining agreement." *See United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960); *accord Turner v. United Steelworkers of Am., Local 812*, 581 F.3d 672, 675 (8th Cir. 2009). Similarly, the grounds for vacatur under the FAA are limited to four extreme circumstances:

 (1) where the award was procured by corruption, fraud, or undue means;

> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). In *Hall Street Associates, L.L.C. v. Mattel, Inc.*, the Supreme Court held that these four grounds are the exclusive grounds for vacatur under the FAA. 552 U.S. 576, 583 (8th Cir. 2009) ("We now hold that §§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification."). Citing *Hall Street*, the Eighth Circuit held recently that the four grounds for vacatur listed in § 10 are exclusive, and that other, judicially created grounds for vacatur are no longer "cognizable." *See Medicine Shoppe Int'l, Inc. v. Turner Invs., Inc.*, 614 F.3d 485, 489 (8th Cir. 2010) (noting that, before *Hall Street*, a court could vacate arbitration awards on grounds other than those listed in the FAA, including if the award showed a "manifest disregard for the law," or if it failed to draw its essence from the agreement, but concluding that only the grounds listed in the FAA were cognizable after *Hall Street*); *but see Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 130 S. Ct. 1758, 1768 n.3 (2010) ("We do not decide whether 'manifest disregard' survives our decision in *Hall Street*

*Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 [] (2008), as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10.").

Finally, an arbitration award may be vacated under Missouri law when:

(1) The award was procured by corruption, fraud or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing . . . as to prejudice substantially the rights of a party; or

(5) There was no arbitration agreement . . . and the party did not participate in the arbitration hearing without raising the objection . . .

Mo. Stat. Ann. § 435.405.

In its complaint and briefs in support of its motion for summary judgment, Breckenridge contends that the arbitrator's award may be vacated under the LMRA, the FAA, or Missouri law, because the arbitrator exceeded his powers in crafting an award that fails to draw its essence from the parties' CBA. More specifically, Breckenridge argues that the arbitrator ignored the CBA's plain language, imposed his own preferred solution, and disregarded applicable federal law, including the Family and Medical Leave Act. I disagree.

First, to the extent the FAA applies to this case,[1] it does not provide Breckenridge with any relief. Within the Eighth Circuit, Breckenridge's claim – that the award should be vacated under the FAA because the arbitrator's award does not "draw its essence" from the parties' CBA – is no longer cognizable. *See Medicine Shoppe*, 614 F.3d at 489 ("Appellants' claims, including the claim that the arbitrator disregarded the law, are not included among those specifically enumerated in § 10 and are therefore not cognizable."). Second, even if this claim is still cognizable under the LMRA post *Medicine Shoppe*,[2] Breckenridge has failed to make a sufficient showing that the arbitrator's award fails to draw its essence from the parties' CBA.

As mentioned above, an arbitrator's award must stand so long as it draws its essence from the parties' CBA. *See, e.g., Boise Cascade*, 309 F.3d at 1080. "An

---

[1] As Breckenridge points out in its briefs, it is unclear whether collective bargaining agreements are subject to the FAA. *See, e.g., Alfred v. Avis Rent-A-Car*, 247 Fed. Appx. 167, 170 (11th Cir. 2007) ("Neither this Court nor the Supreme Court has decided whether collective bargaining agreements are subject to the FAA.") (citation omitted); *but see Williams v. National Football League*, 582 F.3d 863, 883 (8th Cir. 2009) (considering whether an arbitration award made pursuant to a collective bargaining agreement between National Football League players and team owners should be vacated under the FAA); *cf. also International Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp.*, 380 F.3d 1084, 1097 (8th Cir. 2004) (noting that "section 301 takes precedence over the FAA where conflicts might exist[].").

[2] *C.f., e.g., Martin Marietta Materials, Inc. v. Bank of Okla.*, 304 Fed. Appx. 360, 362 (6th Cir. 2008) ("The parties . . . assume that the labor-arbitration line of cases applies to arbitration awards controlled by the Federal Arbitration Act and that the two standards are roughly the same. That may well be an appropriate assumption: '[F]ederal courts have often looked to the Act for guidance in labor arbitration cases,' *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 n.9 [] (1987), and panels of this court have suggested that labor-arbitration cases govern disputes under the Federal Arbitration Act . . . .").

arbitrator's award draws its essence from the parties' agreement as long as it is derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention." *Williams*, 583 F.3d at 883 (internal alterations and citations omitted). If an agreement's language is plain or "unmistakably clear," an arbitrator must enforce it as written , but if "the plain language of the parties' agreement is silent or ambiguous with respect to a disputed issue, an arbitrator is obliged to consider other relevant sources of the parties' intent." *Boise Cascade*, 309 F.3d at 1082.

Here, Breckenridge first claims the arbitrator ignored the plain language of the parties' agreement, which gives Breckenridge the right to "establish rules for employee safety" and to "promulgate work rules," when he concluded that Breckenridge violated the agreement by not sending Eguia for a second FCE. Breckenridge also claims this award violates CBA's the FCE provision, which provides:

> The Company reserves the right to require the FCE at any time in its sole discretion, but generally the following situations will require the FCE.
> 1. After an injury (work or non-work related) that has caused the employee to miss four (4) or more consecutive days of work, provided that the injury impacts or is otherwise related to a part of the body involved in the essential functions of the Concrete Driver job position . . .
>
> 2. After an absence from work for any reason of 60 consecutive calendar days or more.

Essentially, Breckenridge argues that the CBA's employee safety provision and its FCE provision both clearly and unambiguously gave Breckenridge sole discretion to decide when to require or deny an FCE evaluation. Thus, Breckenridge argues, it erred in exercising its discretion to deny Eguia a second FCE, the arbitrator ignored the CBA's plain language. I disagree.

The language in these provisions is not so "unmistakably clear" as Breckenridge contends, at least not with respect to the particular issue before the arbitrator. I agree that it is clear from the agreement that Breckenridge has the sole right to establish employee-safety rules and to decide when to *require* an employee to take an FCE, but the language in those provisions is silent as to the parties' intent with respect to the specific issue before the arbitrator – whether Breckenridge must allow an employee to take a second FCE when requested and when the employee presented evidence from his own physician that he was ready to return to work. *Compare Excel Corp. v. United Food & Commercial Workers Int'l Union, Local 431*, 102 F.3d 1464, 1468 (8th Cir. 1996) (vacating arbitrator's award that company violated parties' CBA by terminating employee who had been on medical absence for one year, which was based on consideration of company's past practices, when relevant CBA provision was clear and unambiguous: an employee would be terminated if absent for "any reason" for a period of twelve months.). The FCE provision does not say, for example, that Breckenridge has the

sole discretion to decide when an FCE "is required," but rather gives Breckenridge the sole discretion to decide when it may require an employee to take one. Because the FCE provision says nothing about when, in general, an FCE is required, I cannot conclude that the arbitrator, in interpreting when Breckenridge was required to order an evaluation, ignored the agreement's plain language and dispensed with his own brand of industrial justice. Thus, the arbitrator's consideration of Breckenridge's past practice with other employees taking FCEs was appropriate for his determination of the parties' intent with respect to the particular issue before him. *See, e.g., International Woodworker v. Weyerhaeuser Co.*, 7 F.3d 133, 136-37 (8th Cir. 1993) ("Thus, when the arbitrator construed this ambiguous provision without seeking the parties' guidance as to its intent and without evidence of their relevant past practices, he acted without considering the entire agreement."); *Bureau of Engraving, Inc. v. Graphic Commc'ns Int'l Union, Local 1B*, 164 F.3d 427, 429 ("If an arbitrator attempts to interpret a written agreement that is silent or ambiguous without considering the parties' intent, his award will fail to draw its essence from the [agreement].").

Additionally, as Local 682 points out, Breckenridge agreed in its submissions to the arbitrator that the CBA afforded it "the right to adopt reasonable rules to ensure the safety and efficiency of its operation." Accordingly, the arbitrator appropriately considered what was "reasonable" under the agreement

by reviewing the parties' past practices, including Breckenridge's past practice of allowing other employees to take another FCE when they failed the first time. Even if the arbitrator came to the wrong factual conclusions about those past practices, or, as Breckenridge argues, ignored key differences between those other employees and Eguia, I cannot vacate his decision for factual error. *See Boise Cascade*, 309 F.3d at 1080 (courts not allowed to reconsider the merits of an arbitral award, "even though the parties may allege that the award rests upon errors of fact or misinterpretation of the contract.").

Breckenridge's second argument – that arbitrator manifestly disregarded applicable FMLA provisions – also fails. Breckenridge contends that it was required by 29 C.F.R. § 825.307(c)[3] to send Eguia to a third physician for a binding medical evaluation, rather than allow him to take another FCE evaluation. The arbitrator concluded, however, that Breckenridge violated the CBA in doing this, because Breckenridge essentially supplanted its own past practice of allowing employees to take another FCE examination when they had medical releases from their physicians with the FMLA. I disagree that the arbitrator's conclusion amounts to manifest disregard of the law.

---

[3] 29 C.F.R. § 825.307 provides a general procedure for an employer to evaluate whether an employee has sufficiently evidenced the medical necessity of a lengthy leave of absence. 29 C.F.R. § 825.307(c) in particular provides that, if there are conflicting opinions between the employee's physician and the physician selected by the employer about the medical necessity of the employee's absence, the "employer may require the employee to obtain certification from a third health care provider, again at the employer's expense."

Within the Eighth Circuit, an arbitrator's decision amounts to manifest disregard for the law when he "clearly identif[ies] the applicable, governing law and then proceed[s] to ignore it." *E.g., Boise Cascade*, 309 F.3d 1080. As I mentioned above, even if this ground for vacatur survives in LMRA cases after *Medicine Shoppe*, the arbitrator in this case did not disregard clearly applicable law. To begin with, it is far from clear that the 29 C.F.R. § 825.307 even applies in this instance. That regulation provides rules for determining whether an employee has sufficiently evidenced the medical necessity of his extended absence. Here, Eguia attempted to show through his physician's clearance that he was ready to return to work. Moreover, rather than recognizing that 29 C.F.R. §825.307 clearly applies in this case and then willfully refusing to apply it, the arbitrator concluded that this regulation did not apply to the case and did not replace the CBA's FCE provision. Even if this is legally incorrect, I cannot vacate the award on this basis. *E.g., Electrolux Home Prods. v. United Auto. Aerospace & Agric. Implement Workers of Am.*, 416 F.3d 848, 855 (8th Cir. 2005). A legally incorrect conclusion that a law does not apply is different from manifest disregard for the law, in which the arbitrator recognizes that a given law applies but still refuses to apply it. *Cf., e.g., Stolt-Nielsen*, 130 S. Ct. at 1768 n.3.

Because Breckenridge's only claims for vacatur under the FAA are no longer cognizable, I must grant summary judgment to Local 682 on those claims.

Additionally, Breckenridge has failed to show that the arbitrator exceeded his powers and issued a decision that failed to draw its essence from the parties' CBA. Thus, I must grant summary judgment to Local 682 and confirm the award under the LMRA and Missouri law.

I conclude, however, that I cannot award Local 682 its attorney's fees. Local 682 contends it is entitled to these fees, because Breckenridge's claims are wholly without merit, and it acted in "bad faith, vexatiously, wantonly, or for oppressive reasons" in filing this lawsuit. *See, e.g., International Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 762 F.2d 76, 77 (8th Cir. 1985). Although Local 682 is correct that the Eighth Circuit recognizes this as a ground for awarding fees, *see id.*, I cannot conclude that Breckenridge's action is wholly without merit or taken in bad faith. Breckenridge presented the plausible claim that it had a unmistakably clear right under the parties' CBA to determine when an FCE was required. I have disagreed with that assertion, but it was not totally without merit. I cannot, therefore, conclude that Breckenridge acted in bad faith, so I must deny Local 682's request for fees.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#24] is granted.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment [#26] is denied.

**IT IS FURTHER ORDERED** that defendant's request for attorney's fees and costs is denied.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

                                      CATHERINE D. PERRY
                                      UNITED STATES DISTRICT JUDGE

Dated this 24th day of January, 2011.